897 F.2d 1022
 133 L.R.R.M. (BNA) 2765, 58 USLW 2532,
114 Lab.Cas. P 12,036
 UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION,
AFL-CIO, LOCAL 7, United Food & Commercial
Workers, Local Union 7R, an
Unincorporated Labor
Organization,
Plaintiff-Appellee,
v.
GOLD STAR SAUSAGE CO., a Colorado Corporation, Defendant-Appellant.
UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION,
AFL-CIO, LOCAL 7, Plaintiff-Appellant,
v.
GOLD STAR SAUSAGE CO., a Colorado Corporation, Defendant-Appellee.
 Nos. 88-1951, 89-1199.
 United States Court of Appeals,
Tenth Circuit.
 March 1, 1990.
 
 John P. Bowen, Wheat Ridge, Colo., for United Food & Commercial Workers Intern. Union, AFL-CIO, Local 7.
 Paul F. Hodapp (Rodney L. Smith, with him on the briefs) of Eiberger, Stacy, Smith & Martin, Denver, Colo., for Gold Star Sausage Co.
 Before LOGAN and MOORE, Circuit Judges, and THOMPSON, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 These appeals require us to consider the extent to which a union is entitled to compulsory arbitration of certain grievances arising with an employer after expiration of a collective bargaining agreement which, during its term, unquestionably governed such disputes. Because we conclude that the grievances involved in these cases are not subject to compulsory arbitration, either pursuant to the expired collective bargaining agreement or under the employer's "last offer," which was unilaterally implemented after bargaining reached impasse, we affirm the district court in No. 89-1199 and reverse in No. 88-1951.
 
 
 2
 * United Food and Commercial Workers, Local Union No. 7R (the Union) is the authorized bargaining representative for employees of Gold Star Sausage Co. (the Company). The Company and the Union were parties to a series of collective bargaining agreements, the last of which expired on June 1, 1987. Numerous attempts to negotiate a new agreement failed and, on or about June 29, 1987, impasse was reached, and the Company made a last offer. After its rejection by the Union and the employees, this offer was unilaterally implemented on July 9, 1987.
 
 
 3
 On August 12, 1987, the Company gave an employee a written warning for provoking another employee. On August 14, two employees were suspended and then terminated for alleged theft of Company property. The Union filed grievances claiming that these actions by the Company violated a provision of the parties' expired collective bargaining agreement forbidding discipline or discharge of covered employees without just cause. The parties met in efforts to resolve the grievances and, when these efforts failed, the Union demanded arbitration pursuant to the broad arbitration clause of the expired contract. When the Company refused, the Union filed the action which became No. 88-1951.
 
 
 4
 Five later grievances are involved in No. 89-1199. Two assert violations of the "just cause" section of the expired contract similar to those alleged in No. 88-1951. Two assert violation of a provision in the expired agreement awarding job openings to the most senior qualified employee. One asserts violation of a clause of the old contract which arguably prohibited supervisors from performing work customarily done by bargaining unit employees. These grievances arose between approximately five months and seventeeen months after the expiration of the collective bargaining agreement. Number 89-1199 is a suit to compel arbitration of these grievances.
 
 
 5
 Both cases were decided on cross-motions for summary judgment. In No. 88-1951, the district judge held that the Supreme Court's decision in Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionary Workers Union, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), recognized "a strong presumption favoring arbitrability in union contracts, even after the contract ha[s] terminated." II R. at 18. The judge did not believe that this presumption should apply only after a particular dispute is found to have "arisen under" the contract. Rather, the court appeared to hold that any dispute arising within a reasonable time after the expiration of the contract is governed by the contract's arbitration clause, unless the presumption of arbitrability is negated expressly or by clear implication. Id. at 18-22. Because there was no clear negation of the presumption in this case, the district court granted the Union's motion for summary judgment, denied the Company's motion, and ordered the grievances submitted to arbitration.
 
 
 6
 The district judge in No. 89-1199 took a very different approach. He concluded that, before "apply[ing] the Nolde Bros. presumption," he "must first determine whether the disputed right arose under the Contract...." United Food and Commercial Workers v. Gold Star Sausage Co., 713 F.Supp. 1379, 1381 (D.Colo.1989). Relying on Chauffeurs, Teamsters and Helpers v. C.R.S.T., Inc., 795 F.2d 1400 (8th Cir.), cert. denied, 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986), the court concluded that "the rights involved here do not arise under the Contract." Gold Star, 713 F.Supp. at 1381. The court also found that arbitration could not be compelled under the Company's last offer because, having been rejected by the Union, that offer "cannot be transformed into a binding contract under which arbitration can be ordered." Id. at 1381-82. Accordingly, summary judgment was entered in favor of the Company and against the Union.
 
 
 7
 These appeals followed.
 
 II
 
 8
 In reviewing the district courts' grants of summary judgment in these cases, we apply the same standard as the courts below, see Fed.R.Civ.P. 56(c), and examine the district courts' conclusions de novo. See, e.g., Ewing v. Amoco Oil Co., 823 F.2d 1432, 1437 (10th Cir.1987).
 
 
 9
 Our resolution of these appeals hinges upon our interpretation of Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionary Workers Union, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), in which the Court held that the employer could be forced to arbitrate a dispute over severance pay pursuant to the parties' collective bargaining agreement, even though the dispute arose after expiration of the agreement. The parties' contract had expired amid ongoing negotiations for a new agreement. Four days after termination of the contract, faced with a threatened strike after the union rejected its last offer, the company permanently closed its plant. The company refused to give terminated employees the severance pay called for in the collective bargaining agreement. The Supreme Court determined that "[t]he dispute ..., although arising after the expiration of the collective-bargaining agreement, clearly arises under that contract." Id. at 249, 97 S.Ct. at 1070 (emphasis in original). The Court then held that arbitration provisions are presumptively intended to survive expiration of collective bargaining agreements, and that this presumption "must be negated expressly or by clear implication." Id. at 255, 97 S.Ct. at 1074.
 
 
 10
 In the appeals at bar the Union argues, and the district court in No. 88-1951 apparently held, that Nolde Brothers stands for the proposition that a dispute which would have been arbitrable during the contract term is also arbitrable after the contract's expiration, absent clear indication that post-contract arbitration was not intended. Thus, the Union assumes that a dispute "arises under" the expired agreement if it would have been arbitrable had it arisen during the term of the agreement. The cases interpreting Nolde Brothers, however, do not support this proposition. Instead, the courts generally hold that, to "arise under" the expired contract, a dispute "must either involve rights which to some degree have vested or accrued during the life of the contract and merely ripened after termination, or relate to events which have occurred at least in part while the agreement was still in effect." Chauffeurs, Teamsters and Helpers, Local Union v. C.R.S.T., Inc., 795 F.2d 1400, 1403 (8th Cir.) (en banc), cert. denied, 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986).
 
 
 11
 A few courts have adopted a more expansive interpretation of Nolde Brothers, albeit in cases in which the result would have been the same under the rule announced in C.R.S.T. For example, in Seafarers International Union v. National Marine Services, Inc., 820 F.2d 148 (5th Cir.1987), the Fifth Circuit said that "[t]he scope of the rule articulated by the Supreme Court in Nolde is broad: disputes grounded on a collective bargaining agreement containing an arbitration clause are arbitrable even after expiration of the agreement unless the arbitration clause states otherwise." Id. at 154.[1] The court found support for its broad interpretation in "both the language of the [Nolde Brothers ] opinion and the history of the case." Id. at 152. Specifically, the court found it highly significant that the Supreme Court, although presented with the Fourth Circuit's holding that "when a dispute turns on whether parties intended certain accruable rights to be enjoyable even after contract expiration, the dispute must be arbitrated if the contract provided for arbitration of such disputes," id. (summarizing Local No. 358, Bakery & Confectionary Workers Union v. Nolde Brothers, Inc., 530 F.2d 548, 552 (4th Cir.1975)) did not in its own opinion "draw any distinction between disputes involving rights that accrue and disputes involving rights that do not accrue under the collective bargaining agreement," National Marine, 820 F.2d at 153.[2]
 
 
 12
 We do not think that the history of the Nolde Brothers litigation can be loaded with such heavy baggage. It does not follow that, because the Supreme Court neither adopted nor rejected one rather narrow ground of affirmance, lower courts must reach for the broadest possible interpretation of the Supreme Court's holding. The Supreme Court's approach in Nolde Brothers certainly is not contrary to the Eighth Circuit's approach in C.R.S.T., which recognizes the involvement of accruable rights in a dispute as one basis for finding an obligation to arbitrate grievances arising after contract termination.
 
 
 13
 We believe that the Eighth Circuit's interpretation of Nolde Brothers strikes the proper balance between the two important principles of labor law involved in these cases: the idea that "the arbitration duty is a creature of the collective-bargaining agreement and that a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so," Nolde Brothers, 430 U.S. at 250-51, 97 S.Ct. at 1071-72; and the "well-established federal labor policy favoring arbitration as the means of resolving disputes over the meaning and effect of collective-bargaining agreements," id. at 254, 97 S.Ct. at 1073. By requiring the dispute to relate back, in some meaningful sense, to the time during which the collective bargaining agreement was in force before deeming it to arise under that agreement, the Eighth Circuit's approach gives weight to the first principle mentioned above. Once a dispute is found to arise under the agreement, the strong presumption in favor of arbitration applies. In contrast, the Union's interpretation stresses the policy favoring arbitration at the expense of the policy against forcing arbitration on a party who has not agreed to it. Essentially, it asks us to give it an important part of the benefits of a collective bargaining agreement with none of the attendant responsibilities by, in effect, adding an unbargained-for provision to the parties' expired contract. We do not think Nolde Brothers requires or supports such a result.
 
 III
 
 14
 We must now determine whether the particular disputes involved in these cases "arise under" the collective bargaining agreement. The parties agree that all events leading up to the disputes at issue occurred after the agreement expired. Therefore, we need only consider whether any of the disputes involve rights which to some degree vested or accrued during the life of the agreement.
 
 
 15
 Five of the grievances at bar involve the right to be disciplined or discharged only for "just cause." This right "is strictly a creature of the collective bargaining agreement and its life as a matter of contract does not extend beyond contract expiration." C.R.S.T., 795 F.2d at 1404. Two of the grievances involve violation of seniority rights conferred by the old contract. The courts unanimously hold that "[s]eniority is not only born from the collective bargaining agreement; it does not exist apart from that contract." Cooper v. General Motors Corp., 651 F.2d 249, 251 (5th Cir. Unit A 1981) (citing cases). The final grievance involves the right to exclude supervisors from performing work reserved under the contract for bargaining unit employees. We hold that this right expires with the contract that created it. Cf. O'Connor Co. v. Carpenters Union No. 1408, 702 F.2d 824, 825 (9th Cir.1983) (employer not required to arbitrate claim that, after expiration of agreement, it maintained non-union employees at job site). Therefore, none of the disputes in these cases are subject to compulsory arbitration under the expired agreement.
 
 IV
 
 16
 The Union argues that, even if arbitration cannot be ordered under Nolde Brothers, it should be ordered under the terms of the Company's unilaterally-implemented final offer. The implemented offer contains an arbitration provision, the Union argues, and "[t]he Company assumed the obligation to arbitrate when it implemented its offer." Appellant's Opening Brief, No. 89-1199, at 20.
 
 
 17
 This argument ignores the fact that Section 301(a) of the Labor-Management Relations Act, 29 U.S.C. Sec. 185(a), gives this court jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization" (emphasis added). The Union does not even allege that the Company's last offer is, in some sense, a contract between the parties, much less point to any facts in the record that might support such an assertion. Cf. Taft Broadcasting Co. v. NLRB, 441 F.2d 1382 (8th Cir.1971) (letter from employer constituted unilateral contract accepted by performance; sufficient to establish interim agreement). The stipulated facts show that the Union has never agreed, even tentatively, to the major provisions of the Company's last offer. It is well established that the existence of a contract is an essential jurisdictional prerequisite to suit under Section 301(a). See, e.g., International Bhd. of Elec. Workers v. Sign-Craft, Inc., 851 F.2d 910, 912 (7th Cir.1988). Because the Company's last offer is not a contract between the parties, this court is without jurisdiction to consider whether the disputes in these cases should be referred to arbitration pursuant to its terms. Milwaukee Typographical Union v. Madison Newspapers, Inc., 444 F.Supp. 1223, 1227 (W.D.Wis.1978), aff'd, 622 F.2d 590 (7th Cir.1980).[3]
 
 
 18
 For the foregoing reasons, the decision of the district court in No. 89-1199 is AFFIRMED and the decision of the district court in No. 88-1951 is REVERSED.
 
 
 
 *
 The Honorable Ralph G. Thompson, Chief Judge, United States District Court for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 The court indicated that, although it interpreted Nolde Brothers more broadly than the Eighth Circuit, it believed the "result in this case" to be consistent with C.R.S.T., because many of the events giving rise to the dispute occurred while the agreement was in effect. National Marine, 820 F.2d at 153 n. 3
 
 
 [2]
 National Marine cited Local Joint Executive Bd. of Las Vegas, Culinary Workers Union v. Royal Center, Inc., 796 F.2d 1159 (9th Cir.1986), and Federated Metals Corp. v. United Steelworkers of America (AFL-CIO), 648 F.2d 856 (3d Cir.), cert. denied, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981), as supporting its broad reading of Nolde Brothers. We do not believe they support National Marine 's position. Federated Metals involved a dispute over pension rights that, the court stated, "like that in Nolde, turns on differing interpretations of the expired Pension and Disability Agreement, and thus arises under that agreement." Id. at 861. Royal Center involved a charge that the employer violated a collective bargaining agreement by failing to condition sale of its business on purchaser's assumption of the agreement. The employer had first closed its business, thus terminating its obligations under the agreement, and then sold the business without the transfer clause required by the expired contract. The court found that these unanticipated events made ordering arbitration after the termination "the only way" to "preserv[e] the original intent of the parties as well as possible...." Royal Center, 796 F.2d at 1163 (emphasis in original). We do not have before us the unusual situation in which unanticipated events have caused the termination of the collective bargaining agreement and ordering arbitration is the only way to preserve the parties' original intent. Our holding today is not inconsistent with ordering arbitration of such disputes
 
 
 [3]
 We reject the Union's suggestion that if we do not assert jurisdiction to monitor the Company's implementation of its last offer, the Company can completely disregard the terms of that offer and the Union will be without any effective remedy. "To the extent that the Company has deviated from the implemented proposal, such conduct may arguably constitute a unilateral change in the terms and conditions of employment in violation of section 8(a)(5) of the NLRA, 29 U.S.C. Sec. 158(a)(5) (1982)." Cement, Lime, Gypsum and Allied Workers Division, International Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local Lodge v. Whitehall Cement Mfg. Co., Civ. A. No. 87-1750 (E.D.Pa. Dec. 4, 1987) (1987 WL 26557, at 4). In the absence of a contract, the National Labor Relations Board has exclusive jurisdiction over such unfair labor practice claims. Id