# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-3702

_____

| | | |
|---|---|---|
| Julie A. McCormick; John F. Minnichoffer; Thomas D. O'Connor; Duane A. Opitz; Barbara C. Sjostrom; James A. Soshnik; Debra C. Stangler; Jacqueline J. Statz; Tami K. Williamson; Timothy C. Wise, | * * * * * * * | |
| Appellants, | * * | Appeal from the United States District Court for the |
| v. | * * | District of Minnesota. |
| Aircraft Mechanics Fraternal Association; Aircraft Mechanics Fraternal Association Local 33; Northwest Airlines Corporation, also known as Northwest Airlines, Inc., | * * * * * * * | |
| Appellees. | * | |

_____

Submitted: June 13, 2003

Filed: August 22, 2003

_____

Before BOWMAN, MURPHY, and BYE, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Ten former employees (hereinafter "the Plaintiffs") of Northwest Airlines sued Northwest as well as their former union, the Aircraft Mechanics Fraternal Association (AMFA), in an effort to reclaim their jobs. The District Court[1] granted motions by Northwest and AMFA to dismiss the claims. We affirm.

The Plaintiffs were at one time employed by Northwest as custodians, and, in that capacity, were members of AMFA. The Plaintiffs then switched jobs at Northwest and became stock clerks. With the change in position came a change in union membership: the International Association of Machinists (IAM) represented Northwest stock clerks. In September 2001, Northwest furloughed the Plaintiffs, who now seek to return to their jobs as custodians and point to the most recent collective bargaining agreement between AMFA and Northwest—an agreement signed in May 2001, after the Plaintiffs had left AMFA and become stock clerks—as giving them the right to do so. Specifically, the Plaintiffs believe a provision in this agreement affords each the right to a job as a custodian, even it means displacing an AMFA member with less seniority from his or her job. The Plaintiffs asserted these rights, commonly called "bumping rights," but AMFA and Northwest disagreed with the Plaintiffs' interpretation of this provision in the agreement and refused to hire them as custodians. The Plaintiffs filed a grievance with AMFA, but AMFA did not pursue it because they did not read the provision to afford the Plaintiffs any bumping rights. The Plaintiffs then initiated this lawsuit, alleging that AMFA breached its duty of fair representation and that Northwest and AMFA breached the collective bargaining agreement. Both AMFA and Northwest filed motions to dismiss the Plaintiffs' claims. AMFA's motion contended AMFA did not owe the Plaintiffs a duty of fair representation, leaving the Plaintiffs without a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). Northwest's motion was premised on the

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

breach-of-contract claims being preempted by the Railway Labor Act (RLA), 45 U.S.C. §§ 151–188 (2000). The District Court granted both motions.

"We review *de novo* a district court's grant of a motion to dismiss, applying the same standards as were employed by the district court." Ballinger v. Culotta, 322 F.3d 546, 548 (8th Cir. 2003). We accept the allegations in the complaint as true, and "will dismiss the case only when 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Casazza v. Kiser, 313 F.3d 414, 418 (8th Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45–46 (1957)).

Generally, the RLA would preempt our consideration of the claims arising from the May 2001 collective bargaining agreement. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 262–63 (1994) (stating that state-law claim is preempted if it depends on interpretation of collective bargaining agreement); see also Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 302–03 (1989) (explaining that disputes concerning collective bargaining agreements are subject either to a mediation process or to arbitration). RLA preemption, however, has an exception: the RLA does not preempt "hybrid actions," which are suits that allege both a breach of the collective bargaining agreement by the employer and a breach of the duty of fair representation by the union. Evans v. Northwest Airlines, Inc., 29 F.3d 438, 439 n.2 (8th Cir. 1994). The Plaintiffs argued that this exception applies.

Where a bargaining agent has "statutory authority to represent all members of a designated unit," it is statutorily obliged "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177 (1967). This obligation is the duty of fair representation, and it applies when a union negotiates, administers, and enforces a collective bargaining agreement. See Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 77 (1991). As AMFA and

-3-

Northwest have pointed out, "exclusive representation is a necessary prerequisite to a statutory duty to represent fairly." Kuhn v. Nat'l Ass'n of Letter Carriers, Branch 5, 528 F.2d 767, 770 (8th Cir. 1976). The principle underlying this rule is conflict avoidance: because the interests of union members will often diverge from those of non-members, a union cannot owe a duty of fair representation to both classes without creating "the potential for severe internal conflicts." Allied Chem. & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div., 404 U.S. 157, 173 (1971) (holding that union owes no fair duty of representation to former workers who are retirees).

The Plaintiffs allege AMFA breached its duty by failing to enforce the May 2001 agreement and by unfairly handling their grievances. As AMFA and Northwest correctly argue, these claims are foreclosed. The Plaintiffs were stock clerks represented by IAM when these alleged breaches occurred, so AMFA, no longer the Plaintiffs' exclusive bargaining agent, owed them no duty. See Kuhn, 528 F.2d at 770 (concluding that a union representing letter carriers owed no duty to a postal employee who served as a janitor). This result comports with the conflict-avoidance rationale discussed above. The interests of a former union member claiming seniority or bumping rights will be opposed to those of a current union member who wishes to keep his job and not be moved down the seniority ladder. AMFA owes only its current members a duty of fair representation. As the Supreme Court explained, "[F]ormer members . . . may suffer from discrimination in collective-bargaining agreements because the union need not 'affirmatively . . . represent [them] or . . . take into account their interests in making bona fide economic decisions in behalf of those whom it does represent.'" United Mine Workers of Am. Health & Ret. Funds v. Robinson, 455 U.S. 562, 574–75 (1982) (quoting Pittsburgh Plate Glass Co., 404 U.S. at 181 n.20).

The Plaintiffs also contend that AMFA breached its duty of fair representation by ineffectively representing their seniority and bumping rights. According to the

Plaintiffs, AMFA acquired a duty to represent their seniority and bumping rights because these rights were established by a prior collective bargaining agreement between AMFA and Northwest that was put into effect when the Plaintiffs were AMFA members. Even though the Plaintiffs have since left AMFA and this agreement is no longer in effect (the May 2001 agreement is now in effect), they believe AMFA continues to owe them a duty in representing these rights. This argument fails to recognize that seniority and bumping rights are contractual terms whose power does not extend beyond the life of the contract. See Cooper v. Gen. Motors Corp., 651 F.2d 249, 250–51 (5th Cir. 1981). These rights are not vested rights, and they do not give rise to a duty of fair representation. Id. As explained above, that duty is a statutory obligation that attaches when a union becomes the exclusive bargaining agent of an employee and ends when the exclusive representation ends. As AMFA is no longer the Plaintiffs' exclusive representative for bargaining with Northwest, it owes no duty to them. Accordingly, the Plaintiffs' duty of fair representation claim cannot stand, and the hybrid exception is inapplicable.[2]

In sum, the Plaintiffs are without recourse in federal court. They cannot maintain a duty of fair representation suit against AMFA because AMFA owed no such duty to the Plaintiffs once the Plaintiffs became members of IAM. They cannot maintain a breach-of-contract claim against Northwest because the RLA preempts that claim. No exception to RLA preemption applies, for these exceptions both require a breach of the duty of fair representation, which AMFA does not owe.

The judgment of the District Court is affirmed.

---

[2]Also inapplicable is a second exception to RLA preemption, which occurs where a plaintiff can show that the union and the employer colluded to behave in a manner that violates the duty of fair representation. See Raus v. Bhd. Ry. Carmen, 663 F.2d 791, 798 (8th Cir. 1981). The Plaintiffs argued this exception applied, but AMFA could not have colluded with Northwest to breach a non-existent duty.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.